UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re | : | CASE NO. 96-23984 (RLK) |
| WINSTED MEMORIAL HOSPITAL | : | CHAPTER 7 |
| *Debtor* | : | CIVIL ACTION NO. 3:00CV1299(AWT) |
| ATTORNEY GENERAL RICHARD BLUMENTHAL *Appellent* | : | |
| v. | : | |
| BARBARA L. HANKIN, TRUSTEE *Appelle* | : | APRIL 22, 2005 |

## NOTICE OF APPEAL

1. Pursuant to F.R.A.P. 4(a)(1) <u>Attorney General Richard Blumenthal</u> hereby gives notice and appeals to the United States Court of Appeals for the Second Circuit from the following Judgment or Order (copy attached): <u>Judgment of District Court dated March 23, 2005 on Appeal from Ruling of United States Bankruptcy Court District of Connecticut on Attorney General's Motion to Compel Trustee to Abandon Certain Charitable Trusts and for Relief from Automatic Stay dated June 13, 2000. Judgment of 3/23/2005 and Ruling of 06/13/2000 attached.</u>

FILED
2005 APR 22 P 4: 38
US DISTRICT COURT
HARTFORD CT

2. The Judgment/Order in this action was entered on <u>March 23, 2005.</u>

                          DEFENDANT

                          RICHARD BLUMENTHAL
                          ATTORNEY GENERAL

BY: _____
     Janet A. Spaulding-Ruddell
     Assistant Attorney General
     Juris No. CT 09095
     55 Elm Street
     P.O. Box 120
     Hartford, CT  06141-0120
     Tel: (860) 808-5020
     Fax: (860) 808-5347
     Janet.Spaulding-Ruddell@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 22nd day of April, 2005 to:

**Attorney for Debtor:**
Robert A White, Esq.
Murtha, Cullina, Richter and Pinney
Cityplace I
185 Asylum Street, 29th Floor
Hartford, CT 06103-3469

**Attorney for Creditor Winsted Memorial Hospital Nurses Units 76 and 29:**
Barbara J. Collins, Esq.
Law Offices of Barbara J. Collins
21 Oak Street, #207
Hartford, CT 06103

**Attorneys for Town of Winchester:**
Douglas A. Strauss, Esq.
Sheila Denton, Esq.
Pullman & Comly, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

**Attorney for Creditor Pension Benefit Guaranty Corporation:**
Deborah J. Bixco, Esq.
Office of the General Counsel
Pension Benefit Guaranty Corporation
1200 K Street NW
Washington, DC 20005-4026

**Attorney for Creditor Tracey J. Wiles, D.O.:**
Edward J. Kelleher, Esq.
Gager & Peterson
One Exchange Place
P.O. Box 2480
Waterbury, CT 06722-2480

**Attorney for General Electric:**
Thomas H. Kukowski, Esq.
Cooper & McCann, LLP
Tarrytown-Elmsford Corporate Center
Three West Main Street
Elmsford, NY 10523-2414

**Attorney for Charlotte Hungerford Hospital:**
Dean W. Baker, Esq.
Wiggin & Dana
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832

**Attorney for State of Connecticut Richard Blumenthal:**
Joan E. Pilver
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120

**Attorney for Creditor Abbott Laboratories:**
Shawn G. Rice, Esq.
Kohner, Mann & Kaileas, S.C.
1572 E. Capitol Drive
P.O. Box 11982
Milwaukee, WI 53211-0982

**Attorney for Fleet National Bank Trustee u/w/o Richard Paine:**
Alan S. Parker
Sorokin, Gross & Hyde, P.C.
One Corporate Place
Hartford, CT 06103-3291

**Spaulding-Ruddell, Janet**

**From:** CMECF@ctd.uscourts.gov
**Sent:** Thursday, March 24, 2005 12:03 AM
**To:** CMECF@ctd.uscourts.gov
**Subject:** Summary of ECF Activity

**Activity has occurred in the following cases:**

**3:00-cv-01299-AWT In Re: Winsted Mem Hospital, et al v. Hankin, et al**
**Judgment  14**

**Docket Text:**
JUDGMENT affirming the Bankruptcy Court's Order and dismissing appeal . Signed by Clerk on 3/23/05. (Montgomery, A.)

4/20/2005

**Spaulding-Ruddell, Janet**

**From:** CMECF@ctd.uscourts.gov
**Sent:** Thursday, April 07, 2005 12:02 AM
**To:** CMECF@ctd.uscourts.gov
**Subject:** Summary of ECF Activity

**Activity has occurred in the following cases:**

**3:00-cv-01299-AWT In Re: Winsted Mem Hospital, et al v. Hankin, et al**
**Transcript 15**

**Docket Text:**
TRANSCRIPT of Telephone Status Conference Proceedings held on 3/14/05 before Judge Alvin W. Thompson. Court Reporter: Corinna F. Thompson. (Wiggins, M.)

```
              UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF CONNECTICUT
- - - - - - - - - - - - - - - x
IN RE:                         :   No. 3:00CV1299(AWT)
WINSTED MEMORIAL HOSPITAL      :
                                   HARTFORD, CONNECTICUT
                               :   MARCH 14, 2005
- - - - - - - - - - - - - - - x
```

COPY

TELEPHONIC STATUS CONFERENCE

BEFORE:

       HON. ALVIN W. THOMPSON, U.S.D.J.

APPEARANCES:

   FOR THE APPELLANT:

       OFFICE OF THE ATTORNEY GENERAL
           55 Elm Street
           Hartford, Connecticut 06106-1774
       BY:  JANET SPAULDING-RUDDELL, ESQ.

   FOR THE TRUSTEE:

       MURTHA, CULLINA
           CityPlace I
           185 Asylum Street
           Hartford, Connecticut 06103-3469
       BY:  LISSA J. PARIS, ESQ.

                                      Corinna F. Thompson, RPR
                                      Official Court Reporter

```
 1              (Whereupon, the proceedings commenced at
 2         2:44 p.m.)
 3         THE COURT:  Good afternoon.
 4         MS. SPAULDING-RUDDELL:  Good afternoon, Judge
 5  Thompson.  This is Janet Spaulding-Ruddell.
 6         MS. PARIS:  And Lissa Paris.
 7         THE COURT:  I have a ruling on the bankruptcy
 8  appeal for you, and I'll simply give you my thoughts.
 9         The decision of the bankruptcy court is being
10  affirmed.  After reading over the opinion, which is in 298
11  B.R. 1 -- wrong opinion, hold on -- 249 B.R. 588 several
12  times and going through the parties' respected briefs, I
13  came to the conclusion that were I to write an opinion, it
14  would be basically the opinion already written by the
15  bankruptcy court with a couple of non-material variations.
16         MS. SPAULDING-RUDDELL:  Okay.
17         THE COURT:  I find that I agree with the
18  Bankruptcy Court's summary of the contentions of the parties
19  and its analysis of the law, including its analysis on the
20  pivotal issue of whether a charitable organization which
21  retains its corporate existence, may, even though it has
22  ceased operating, continue to receive and use charitable
23  gifts, providing that it applies such gifts in accordance
24  with the intent of the donor.
25         Pivotal to the analysis in this case, I believe,
```

1   is the fact that, one, the hospital had neither dissolved
2   its corporate existence nor finished winding down its
3   affairs, even though it had ceased operations and filed a
4   bankruptcy petition, and two, the Bankruptcy Court's
5   decision only permits the hospital to use gifts to pay debts
6   incurred by the hospital when it was still providing patient
7   services to the extent it would have been permitted to do so
8   in the absence of a bankruptcy filing.
9             The appellant gives a detailed review of the law
10  of charitable giving.  However, I don't believe that this
11  changes the fact that the Attorney General bears the burden
12  in invoking the doctrine of approximation, and this Court
13  finds persuasive the Bankruptcy Court's reasoned analysis
14  that the closure of the hospital is not sufficient to
15  require application of the doctrine of approximation to find
16  an alternative beneficiary because, as the trustee argued,
17  use of the gifts to pay for goods and services procured by
18  the hospital while it was actively engaged in providing
19  health care is within the general charitable purposes of the
20  hospital.
21            This Court would add to the Bankruptcy Court's
22  analysis a discussion that is directly on point and it comes
23  from the case of In Re:  Boston Regional Medical Center,
24  Inc.  That's the one at 298 Bankruptcy Reports 1.  That's a
25  2003 decision from the district of Massachusetts which

1    includes all of the additional thoughts that I had, plus
2    some that didn't occur to me in terms of a reasoned analysis
3    on this issue.
4         Rather than reinventing the wheel, I'm adopting
5    what I believe is a very fine analysis by the judge in that
6    case and it is as follows:
7         "At the heart of the churches' argument is the
8    proposition that a charitable organization's payment of
9    creditors, to whom the organization incurred debts in order
10   to further the charitable mission of the organization, is
11   somehow separate from the charitable purpose of the
12   organization and of gifts to that organization.  This
13   proposition cannot withstand scrutiny.  A hospital provides
14   medical services by paying its physicians, nurses,
15   technicians, pharmacists and therapists to provide those
16   services and by paying its suppliers, administrators,
17   lenders, staff, utilities, independent contractors, et
18   cetera, all of whom make it possible for the hospital to
19   exist and function.  When these individuals and entities are
20   not paid contemporaneously with their provision of goods or
21   services -- virtually all are paid in arrears -- they become
22   creditors."
23        That last clause was set off with dashes.
24        "Without payment of these creditors, a hospital,
25   even a not-for-profit hospital, simply would not exist.  The

1  payment of creditors is essential and integral to the
2  carrying on of the charitable mission of the hospital.
3  Indeed, it is the creditors who carry out the charitable
4  work.

5   "One who donates money to a hospital contemplates
6  that the monies donated will be used to advance the medical
7  mission of the hospital.  In doing so, they do not
8  contemplate that hospital personnel will apply donated
9  monies directly to patients' wounds.  They understand full
10 well that the hospital will use the funds to pay the
11 employees and other creditors through which it provides
12 medical care to its patients.

13  "Therefore, assuming for the sake of argument
14 that, in Massachusetts, a charitable corporation receives
15 bequeathed funds in quasi-trust for the medical care of the
16 hospital's patients, it simply cannot be the case that the
17 quasi-trust precludes use of the funds for payment of
18 creditors.  If payment of creditors were inconsistent with
19 the charitable mission of a charitable corporation, then
20 such corporations would have to pay for goods and services
21 in advance, and they could never use debt financing.  In a
22 credit economy, such insistence on payment in advance would
23 hobble charities in the performance of their charitable
24 functions."

25  I'm skipping a few sentences here.

1  "Nor does it make a difference that, in this
2  instance, the hospital has ceased providing medical
3  services. The focus is on the purpose of the payment, not
4  its timing. The debts in question were incurred in
5  furtherance of the charitable mission of the hospital while
6  BRMC was operating as a hospital, and the incurring of that
7  debt did further the mission of the hospital. The fact that
8  the creditors are being paid in arrears is irrelevant. The
9  honoring of obligations at the end of a charitable
10 organization's life is no less integral to its mission than
11 was the incurring of those obligations to further that
12 mission. Both, inseparably, serve its charitable purpose."
13     And I've read from page 28 and 29 of that opinion.
14     Therefore, this Court concludes, like the
15 Bankruptcy Court concluded, that it had not become
16 impossible, impractical or illegal for the hospital to
17 fulfill the donors' intent with respect to the gifts that
18 the Bankruptcy Court determined were included in the
19 bankruptcy estate.
20     There is another point that this Court might
21 elaborate on, having reviewed the appellant's brief, namely,
22 Part IV.B. of the Bankruptcy Court's opinion. I don't know
23 exactly what the appellant argued before the Bankruptcy
24 Court, but it appears to this Court that the Bankruptcy
25 Court in stating that none of the instruments at issue

1    contained a spendthrift provision, was not stating a rule
2    that the presence of a spendthrift provision was the only
3    way to trigger the exclusion from the bankruptcy estate
4    provided for under Section 541(c)(2).  Rather, a spendthrift
5    provision is simply the type of trigger for exclusion that
6    was at issue in Patterson vs. Shumate, which is
7    504 U.S. 753.
8         It may be that the Bankruptcy Court's opinion can
9    be read as not explicitly dealing with the Attorney
10   General's argument that Section 541(c)(2) also excludes from
11   the estate property that is subject to restrictions imposed
12   by state law upon the use and disposition of charitable
13   trusts and gifts given upon a charitable use.
14        However, it is clear that the analysis in
15   Part IV.C. -- that's Roman numeral IV.C. -- of the
16   Bankruptcy Court's opinion sufficiently address this is
17   argument and resolves the issue by determining that the
18   property here is subject to no such restriction under state
19   law.
20        Thus, this Court does not conclude that the
21   Bankruptcy Court required the presence of spendthrift
22   provisions in the language of charitable trusts in order to
23   trigger the provisions of Section a 541(c)(2) in every case.
24   Rather, it appears to this Court that the Bankruptcy Court
25   was trying to address what it understood to be the Attorney

1    General's argument based on Patterson vs. Shumate.

2           However, even if the Bankruptcy Court's opinion
3    were to be construed as making such a statement, it is not
4    material to the Bankruptcy Court's analysis, the material
5    portion of which is found in Part Roman numeral IV.C. of the
6    opinion.

7           And also, so that this Court's reasoning is clear,
8    it should be noted that this Court concludes that the
9    description of the Bankruptcy Court's opinion is not
10   accurate in certain material respects.  I refer to pages 44
11   to 45 of the brief of the appellant.

12          As I read it, the Bankruptcy Court did not -- as I
13   read the Bankruptcy Court's opinion, the Bankruptcy Court
14   did not read Connecticut cases to require formal dissolution
15   to trigger the doctrine of approximation.  It was merely
16   dealing with the doctrine in its purest form.  It only
17   concluded that the doctrine was not triggered here because
18   of a particular facts of the case.

19          In addition, I did not believe that the
20   description of how the opinion treats the In Re: Bishop
21   College case was accurate.  The brief states that the
22   opinion distinguishes Bishop College on a particular basis,
23   then contrasts it with the present case and then criticizes
24   Bishop College for holding that the mere existence of the
25   corporation was insufficient to support a finding that it

1  could carry out the general purpose for which the trusts at
2  issue were intended.
3       I do not believe this is an accurate way to read
4  the Bankruptcy Court opinion, but most importantly, the
5  appellant's brief fails to address what I believe is the
6  real point made in the Bankruptcy Court's opinion about the
7  In Re: Bishop case, which is that in the In Re: Bishop
8  case, the court does not indicate whether the intended use
9  of the gifts was within the college's general charitable
10 purposes.  It simply states that there was no dispute that
11 mere continued existence as a legal entity was insufficient.
12      The Court also notes that again on page 62 of the
13 appellant's brief, the brief incorrectly states that the
14 Bankruptcy Court required formal dissolution of the
15 corporate structure to trigger the doctrine of
16 approximation, and the point is repeated at pages 68 and 73
17 of the appellant's brief.  Again, I do not believe that this
18 is an accurate characterization of the Bankruptcy Court's
19 opinion because my reading of the opinion is that the
20 Bankruptcy Court was simply looking at what in fact does
21 trigger the doctrine of approximation and was explaining why
22 it's not triggered in this case.
23      Finally, I will note as to Issue Number 10,
24 namely, whether the Attorney General has met his burden of
25 proof with respect to the gift of Mildred Smith, the Court

10

1  notes that the appellant is unsuccessful on this argument
2  because the argument assumes that this Court will conclude
3  that all of the charitable gifts included in the appeal must
4  be abandoned.
5       Let me just make sure one thing is clear: When I
6  say that the appellant's brief does not give an accurate
7  characterization of the Bankruptcy Court's opinion, I'm not
8  saying that the appellant was attempting to mischaracterize
9  the Bankruptcy Court's opinion; I'm simply saying that the
10 way the appellant's brief goes through and describes it is
11 inconsistent with what I understand to be the reasoning in
12 the Bankruptcy Court's opinion.
13      So I hope it didn't come across that way.
14      MS. SPAULDING-RUDDELL: No, no. I took it, Your
15 Honor, as a difference in point of view and legal analysis.
16 I didn't take it that I was trying to mischaracterize facts
17 or misrepresent what the court -- I understand what you're
18 saying.
19
20      THE COURT: Thank you.
21      MS. PARIS: And so do I.
22      THE COURT: So for all of these reasons, the
23 Bankruptcy Court's decision is hereby affirmed. And I'll do
24 a one-line order just referring back to the analysis I've
25 given you.
      MS. PARIS: Do you have a court reporter there?

1           THE COURT:  Yes.  I put this on the record in case
2   you wanted a transcript.
3           MS. SPAULDING-RUDDELL:  Can we do the order --
4           THE COURT:  Sure.  I'll have her call -- who should
5   she call?
6           MS. PARIS:  She can call me.  I'll arrange it.
7           THE COURT:  Any questions?
8           MS. PARIS:  Thank you so much for dealing with
9   this.  This has been a long time coming and all of us
10  appreciate it, whatever the outcome is, sir.
11          THE COURT:  Well, I do apologize for the delay.
12  I've just been swamped.  And for me, it's a relief to
13  finally get it done, as you can imagine.
14          MS. PARIS:  We all knew that you had many more
15  cases than anyone needed to have.
16          THE COURT:  I'm definitely getting it done before
17  the retrial starts in this Forbes case in September.  So I'm
18  running through my docket as fast as I can.
19          MS. SPAULDING-RUDDELL:  We really appreciate it.
20          THE COURT:  That's why I'm doing oral rulings
21  rather than writing it up.  I appreciate your understanding
22  on that.
23          MS. PARIS:  Thank you so much.
24          MS. SPAULDING-RUDDELL:  Thank you, Judge.
25  Bye-bye.

THE COURT: Bye-bye.

(Proceedings adjourned at 3:03 p.m.)

13

CERTIFICATE

IN RE:    WINSTED MEMORIAL HOSPITAL

3:00CV1299(AWT)

   I, Corinna F. Thompson, RPR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter on Monday, March 14, 2005, to the best of my skill and ability.

_____
CORINNA F. THOMPSON, RPR
Official Court Reporter
450 Main Street, Room #225
Hartford, Connecticut 06103
(860) 547-0580