UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

ORDER ENTERED ON
6/13/00

IN RE:

WINSTED MEMORIAL HOSPITAL,                Chapter 7

                Debtor                     Case No. 96-23984

APPEARANCES:

    Robert A. White, Esq. and Robert E. Kaelin, Esq.,
    MURTHA, CULLINA RICHTER & PINNEY, LLP          JUN 14 2000
    185 Asylum Street, Hartford, CT 06103-3469,
    Counsel for Barbara L. Hankin, Trustee

    Janet A. Spaulding-Ruddell, Esq., Assistant Attorney General,
    P.O. Box 120, 55 Elm Street, Hartford, CT 06141-0120,
    Counsel for Attorney General of Connecticut

## RULING ON ATTORNEY GENERAL'S MOTION TO COMPEL TRUSTEE TO ABANDON CERTAIN CHARITABLE TRUSTS AND FOR RELIEF FROM AUTOMATIC STAY

KRECHEVSKY, U.S.B.J.

### I.

Winsted Memorial Hospital ("the Hospital"), located in Winsted, Connecticut, filed a Chapter 7 petition on November 25, 1996. On August 19, 1999 and January 7, 2000, Richard Blumenthal, Attorney General of the State of Connecticut ("the Attorney General") filed motions to compel the trustee to abandon certain charitable trusts and to lift the automatic stay based upon the prepetition closing of the Hospital. Barbara L. Hankin, Esq., Trustee ("the Trustee") of the Hospital's bankruptcy estate, filed objections to the motions. The parties submitted briefs on the issues which involved fifteen separate charitable gifts, devises and bequests ("the gifts") to the Hospital for

AO 72A
(Rev.8/82)

which the Attorney General seeks abandonment. The court on March 1, 2000 held a hearing, at which time the parties entered exhibits and presented oral arguments. At the hearing, the Trustee agreed to abandon any interest in five of the gifts (the Adele B. Smith Unitrust, the Abel I. Smith Unitrust, the Harold C. Strong Unitrust, the Agnes P. Kelley Bequest and the Wesley C. Winslow Trust (Trustee's Brief at 1)), and the Attorney General dropped his claim to the Charles H. Pine Trust (Attorney General's Reply at 2), leaving nine of the original fifteen gifts for court determination.

II.

## BACKGROUND

The Connecticut legislature chartered the Hospital in 1895 as a non-profit charitable corporation for the purpose of establishing and maintaining a hospital in Winsted. In September, 1996, due to its worsening financial condition, the Hospital sought to discontinue its inpatient services. The Attorney General filed an action in the Connecticut Superior Court to prevent such closing. The Superior Court appointed a receiver of the Hospital and directed the receiver to marshall the Hospital's assets, including the sums at issue in this proceeding. As authorized by the Superior Court, the receiver closed the Hospital on October 25, 1996, and, on November 25, 1996, the Hospital filed a Chapter 7 petition in this court. The Hospital's corporate existence has not been terminated.

As a charitable institution, the Hospital had, over its years of operation, received numerous gifts, subject to various restrictions. The relevant terms of the gifts at issue in this proceeding are set forth, as appropriate, in the analyses contained in Section V

infra.

### III.

### CONTENTIONS OF THE PARTIES

By statute, Conn. Gen. Stat. § 3-125,[1] the Attorney General is charged with representing the interests of the public, as the intended beneficiaries of funds intended for charitable purposes. Connecticut case law has long held that the attorney general is a necessary party to any action involving the disposition of charitable funds. Copp v. Barnum, 160 Conn. 557, 558 (1970) (where charitable funds are at issue, attorney general is a necessary party); also see Lockwood v. Killian, 172 Conn. 496, 505 (1977)(same); Healy v. Loomis Institute, 102 Conn. 410, 422 (1925) (prior to enactment of statute, held that attorney general is proper party to bring action to enforce terms of charitable trust). See also Hankin v. Auxiliary of Winsted Hospital (In re Winsted Hospital), 236 B.R. 556 (1999). The Attorney General contends that the Hospital's interest in the gifts was restricted to their use for charitable purposes, and that the Hospital's prepetition cessation of operations makes such use impossible as a matter of law. The Attorney General argues that these gifts did not become property of the bankruptcy estate; that the court should compel the Trustee to abandon the gifts; and that the court should grant relief from stay to allow the gifts to be given to alternative

---

[1] Section 3-125, in pertinent part, states:
    The Attorney General shall ... represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes....
Conn. Gen. Stat. Ann. §3-125 (West 1988).

3

beneficiaries, either by the operation of any applicable "gift over" provisions or by <u>cy pres</u> proceedings the Attorney General would commence in state court.

The Trustee concedes that the bankruptcy estate may not claim an interest in any gift greater than that enjoyed by the Hospital prepetition. She agrees that the debts to which each gift is applied are limited to those for which the Hospital would have been permitted to expend the funds had the Hospital continued its operations and not filed its bankruptcy petition. As to those gifts which grant the Hospital the use only of the income, the Trustee makes no claim to the corpus of the gift.

The Trustee's principal objection to the motions is that the debts she intends to pay with the gifts - debts incurred for goods and services acquired by the Hospital while it was still providing patient care - are within the permitted charitable uses of the gifts.[2] She argues that the use of the gifts to pay such debts should depend only on whether the debts were incurred for charitable purposes.

## IV.

## DISCUSSION

### A.

The Bankruptcy Code provides for the creation of a bankruptcy estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C.

---

[2] The Trustee's brief states that other funds are available to pay the administrative expenses of the estate. (Trustee's Brief at 12 n. 5.)

4

§541(a).³ "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." <u>Butner v. United States</u>, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141 (1979).

---

³ 11 U.S.C. § 541, Property of the estate, provides in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
   (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
...
   (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--
      (A) by bequest, devise, or inheritance;
...
(b) Property of the estate does not include--
   (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;
...
   (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law--
      (A) that restricts or conditions transfer of such interest by the debtor; or
      (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.
   (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

5

In the present proceeding, the court must determine whether the Hospital's interests in the gifts qualifies as property of its bankruptcy estate, notwithstanding the prepetition cessation of operations. For each of the gifts involved, the court must first determine whether the Hospital attained a property interest in the gift on the date of the bankruptcy petition (or within 180 days thereafter for subsequent bequests)[4] and, if so, whether the gift contains spendthrift provisions that would exclude it from the bankruptcy estate under §541(c)(2). Finally, and most importantly, the court must determine whether any gift is subject to restrictions that render it "of inconsequential value and benefit to the estate," making an order of abandonment appropriate under §554(b).[5]

### B.

The Attorney General does not question that the Hospital had a vested property interest in all the gifts that were made prepetition and while the Hospital was operating. Connecticut case law "favors the vesting of estates and, unless a contrary intent appears, gifts will be construed to take effect in point of right at the death of the testator, though their enjoyment be postponed to a future time by the interposition of

---

[4] See 11 U.S.C. §541(a)(5)(A) supra.

[5] 11 U.S.C. §554, Abandonment of property of the estate, provides in relevant part:
...
 (b)   On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

6

a life estate or otherwise." Rizzo v. Gersten, 1991 WL 65756 at *1 (quoting Mead v. Close, 115 Conn. 443, 445; other citations omitted).

Whether a trust instrument contains a spendthrift provision is a question of fact to be determined from the instrument itself. The court finds that none of the instruments at issue in this proceeding contain such a provision. The Attorney General cites the decision of the United States Supreme Court in Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519, to support an argument that §541(c)(2) should be construed to exclude from the bankruptcy estate property subject to restrictions other than spendthrift clauses. The Attorney General's reading of Patterson is overbroad and his argument is without foundation. Patterson merely held that §541(c)(2) applied to spendthrift clauses enforceable under federal law (ERISA), as well as to those enforceable under state law.

### C.

With regard to restrictions on the use of the gifts, each of the gifts permit the Hospital to use the funds distributed to it for its general expenses or general charitable purposes, without further restriction. The Attorney General argues that when a charitable organization receives a charitable gift, the effect of the Connecticut charitable uses statutes[6] is to impose a trust for the benefit of the community to be

---

[6] Conn. Gen. Stat. § 45a-514 (1993), Charitable Trusts, provides:

> Any charitable trust or use created in writing or by deed by any resident of the state, or any public and charitable trust or use for aiding and assisting any person or persons to be selected by the trustees of such trust or use to acquire education, shall forever remain

7

served. The Trustee does not dispute that all of the gifts at issue were given to the Hospital as charitable gifts to be used for the Hospital's general charitable purposes. The Trustee argues, however, that use of the gifts to pay for goods and services procured by the Hospital while it was actively engaged in providing health care is within the general charitable purposes of the Hospital.

The Attorney General insists that closure of the Hospital requires the application of the doctrine of approximation (<u>cy pres</u>) to find an alternative beneficiary. The cases he cites are inapposite, since they involve circumstances and arguments different from those involved in the present proceeding. In <u>Duncan v. Higgins</u>, 129 Conn. 136 (1942), the court determined that a charitable gift of a remainder interest had failed due to dissolution of the recipient charitable organization. In <u>Duncan</u>, however, the recipient religious organization had, prior to the death of the life tenant, dissolved its corporate existence after winding down its affairs and transferring the balance of its assets to another organization. <u>Also see</u> <u>Ministers & Missionaries Benefit</u>

---

> to the uses and purposes to which it has been granted according to the
> true intent and meaning of the grantor and to no other use.

Conn. Gen. Stat. §47-2 (1995), Charitable Uses, provides:

> All estates granted for the maintenance of the ministry of the gospel,
> or of schools of learning, or for the relief of the poor, or for the
> preservation, care and maintenance of any cemetery, cemetery lot or
> monuments thereon, or for any other public and charitable use, shall
> forever remain to the uses to which they were granted, according to
> the true intent and meaning of the grantor, and to no other use
> whatever.

AO 72A
(Rev.8/82)

Bd. v. Yale-New Haven Hosp., Inc., 139 Conn. 435 (1953) (applying cy pres after grantee had terminated its corporate existence); Howood House v. Trustees of Donations & Bequests for Church Purposes, Inc., 27 Conn.Supp. 176 (applying cy pres after grantee had terminated its corporate existence); Shawmut Bank v. Yale-New Haven Hosp., Inc., 1997 WL 35814 (Conn. Super. 1997) (court applied cy pres to permit successor corporation to use gift to nursing school, which closed 15 years earlier, to provide nursing scholarships; no indication of any outstanding debt from nursing school's operations). In the present situation, the Attorney General seeks to prevent the use of gifts for payment of expenses incurred for the Hospital's charitable purposes while it was operating. The Attorney General does not contend that any of the expenses to which the Trustee seeks to apply the gifts would be an improper use of the gifts if the Hospital were continuing to operate.

The Attorney General also relies on Salisbury v. Ameritrust, Texas, N.A. (In re Bishop College), 151 B.R. 394 (Bankr. N.D.Tex. 1993), where two charitable trusts were held not to be property of the debtor's bankruptcy estate. The debtor, Bishop College, after filing a Chapter 11 petition, ceased its operations and converted its case to one under Chapter 7. The decision in Bishop College dealt with (1) the trustee's motion for turnover of the principal, as well as the income from a charitable trust, and (2) the trustee's argument that the gift of principal and income from the trust was an absolute conveyance, not restricted to charitable purposes, and that the mere corporate existence of the college was sufficient to entitle it to the assets of the trust fund. The trustee sought dissolution of the trusts and transfer of all their assets to the college. The court

9

did not discuss whether the intended use of the gifts was within the college's general charitable purposes, simply stating that there was "no dispute" that the "mere continued existence as a legal entity is insufficient to support a finding that Bishop College in its present form can carry out the general charitable purpose for which the Trusts were intended." <u>Bishop College</u>, 151 B.R. at 401.

Here, as noted, the Trustee (1) agrees to apply the gifts only to payment of debts incurred (a) prepetition while the Hospital was operating and (b) which would have been permitted uses of the gifts but for the closing and bankruptcy of the Hospital and (2) with regard to gifts of income only, seeks only the income earned by the trust during the pendancy of the bankruptcy case, and makes no claim to the principal.

The Hospital, while it has ceased operations and filed a bankruptcy petition, has neither dissolved its corporate existence nor finished winding down its affairs. Whether the Trustee's use of the gifts at issue to pay debts incurred by the Hospital when it was still providing patient services is a valid charitable use depends on whether, in the absence of the bankruptcy filing, the Hospital would have been permitted to do so. There is no Connecticut case law on this issue, but the court is persuaded by, and will follow, the decisions in several other states to the effect that a charitable organization which retains its corporate existence may, even though it has ceased operating, continue to receive and use charitable gifts, provided it applies such gifts in accordance with the intent of the donor. See <u>Crisp Area Y.M.C.A. v. Nationsbank, N.A.</u>, 526 S.E.2d 63, 66 (Ga. 2000) ("The accepted rule in other jurisdictions is that a bequest to a charitable corporation is given effect if the named entity is still in existence when the time for

10

vesting arrives, even though the corporation meanwhile has become has become entirely inactive. It may take the legacy but must devote it to some proper corporate purpose."); Montclair Nat'l Bank & Trust Co. v. Seton Hall College of Medicine and Dentistry, 233 A.2d 195 (N.J. Super. Ct. App. Div. 1967) (college, operating when testator died but subsequently closed, was entitled to use gift to pay its debts.); Palms Clinic & Hospital, Inc. v. Arizona Soc. for Crippled Children & Adults, Inc. (In re Estate of Daley), 433 P.2d 296 (Ariz. Ct. App. 1967) (clinic that was not operating, but retained its corporate existence could recive legacy.); Old Colony Trust Co. v. Third Universalist Soc. of Cambridge, 188 N.E. 711 (Mass. 1934) (religious corporation which had sold all property and ceased holding services, but did not dissolve, was entitled to receive legacy.).

## V.

## THE NINE INDIVIDUAL GIFTS

### A.   Gifts of Joseph Rosgen, Mary MacLeod and Elizabeth Harden

Joseph Rosgen died in 1994, predeceased by his wife. His will provided for his estate to be held in trust for the benefit of his wife; at her death, the trust was to be dissolved, with a portion of the residuary estate payable to the Hospital. Distribution was delayed as a result of a will contest which has been compromised and approved by this court. The trust document contained no restrictions as to the Hospital's use of the gift.

Mary MacLeod established an inter vivos trust which provided for the distribution, at her death, of a portion of her residuary estate to the Hospital "for its

11

general charitable purposes." (MacLeod Trust at 6.) The trust document provided that if the Hospital "is not in existence at [her] death," its share was to be pro-rated among the other charitable recipients, and that if any of the recipient organizations did not qualify as tax exempt, the taxes attributable to it would be assessed against its share. (Id.) Ms. MacLeod died prior to the closing of the Hospital.

Elizabeth Harden provided in her will and trust instrument for the distribution at her death of a portion of her residuary estate to the Hospital "to be expended both as to income and principal as the governing board [of the Hospital] may determine." (Harden Will at 4; Harden Trust at 2.) Ms. Harden died in 1989.

The court concludes that the gifts of Joseph Rosgen, Mary MacLeod and Elizabeth Harden vested in the Hospital prior to the filing of its bankruptcy petition and that such amounts, subject to the restriction that they be applied to payment of debts incurred for the Hospital's general charitable purposes while it was operating, are part of the bankruptcy estate and should not be abandoned.

### B. Gifts of Edna Spiotta and Helen Kozlick

In her will Edna Spiotta gave to the Hospital a cash gift "for its uses and purposes," with a "request" that it be used to provide rehabilitation and therapy for deserving recipients. Ms. Spiotta died on March 14, 1998. Section 541(a)(5)(A) provides for inclusion in the bankruptcy estate of postpetition bequests, but is limited to those to which the debtor becomes entitled within 180 days after the petiton. Because the Hospital had no right to the gift until the death of Ms. Spiotta more than 180 days postpetition, the gift is not included in the bankruptcy estate.

AO 72A
(Rev.8/82)

The will of Helen Kozlick gave a share in her residuary estate to the Hospital without imposing a restriction on its use. Ms. Kozlick died on July 26, 1997, more than 180 days postpetition. Accordingly, her gift is also excluded from the bankruptcy estate.

### C. Gift of Mildred Smith

Under her will and trust agreement, Mildred Smith, who died in 1988, left her residuary estate to the trust under which three named individuals would receive the income for life, at the death of the last such individual, the Hospital was to receive a fixed amount and the balance of the trust assets, each of which was to be held "as an endowment and permanent fund ... to use the income therefrom for its purposes." (Smith Trust at 9-10.) The trust also provides, "If at the time of distribution, any of the above-named organizations or institutions does not qualify as an organization described in Sections 170(c), 170(b)(1)(A), 2055(a), and 2522(a) of the Federal Internal Revenue Code, then the principal and income of the trust shall be transferred to such other organizations as shall then be described and qualify under such Sections as the Trustees in their sole discretion shall select." (Id. at 11.) The life beneficiaries are alive.

The Trustee has a property interest in the remainder under the terms of the Smith trust. The Trustee acknowledges that the estate does not have a present right to income or principal, but argues that abandonment would be premature as the beneficiaries may die and the Hospital remain a "501(c)(3)" organization while the bankruptcy case is still open. The Attorney General, as movant, has the burden of proving that such property interest is "burdensome to the estate or that it is of

13

inconsequential value and benefit to the estate." 11 U.S.C. §554(b); See, e.g., In re Paolella, 79 B.R. 607, 610 (Bankr. E.D.Penn. 1987) ("In a motion brought pursuant to section 554(b), it is the movant who must make out a prima facie case."). The Attorney General has presented no evidence or arguments that the remainder interest could not benefit the estate. The court concludes that the Attorney General has not met his burden of proof.

### D. Gifts of Alice W. Burke, Richmond Paine and Edward P. Wilcox

The trust funds established by each of the captioned donors provide for the Hospital to receive the income earned on an endowment fund, the principal of which is to remain intact. All three of the donors died prepetition and when the Hospital was providing patient care. All of the gifts provided that they were to be used for the Hospital's general expenses. The Trustee concedes that, since the Hospital had no right prepetition to the principal of these funds, the estate is likewise not entitled to the principal. The Trustee seeks to use the income provided under these gifts during the pendancy of the bankruptcy case to pay debts the Hospital incurred while it was still providing patient services. The Attorney General does not dispute that the debts to which the Trustee intends to apply the gifts would be permissible charitable uses if the Hospital were still providing patient care.

The court concludes that the gifts of Alice W. Burke, Richmond Paine, and Edward P. Wilcox, subject to the restriction that they be applied to payment of debts incurred for the Hospital's general charitable purposes while it was operating, are part of the bankruptcy estate, and should not be abandoned.

14

AO 72A
(Rev.8/82)

VI.

## CONCLUSION

For the stated reasons, the court concludes that the Attorney General's motions be granted with respect to the gifts of Adele B. Smith, Abel I. Smith, Harold C. Strong, Agnes P. Kelley, Wesley C. Winslow, Edna Spiotta and Helen Kozlick; and denied with respect to the gifts of Charles H. Pine, Joseph Rosgen, Mary MacLeod, Elizabeth Harden, Mildred Smith, Alice W. Burke, Richmond Paine and Edward P. Wilcox. An appropriate order will enter. It is

SO ORDERED.

Dated at Hartford, Connecticut this 13TH day of June, 2000.

/s/ Robert L. Krechevsky
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE

15

JUN 1 4 2000

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

ORDER ENTERED ON:
6/13/00
BR
DEPUTY CLERK

IN RE:

WINSTED MEMORIAL HOSPITAL,                Chapter 7

              Debtor                Case No. 96-23984

---

## ORDER

The motions of the Attorney General requesting the court to compel the Trustee to abandon certain charitable gifts and to lift the automatic stay with respect thereto, having been heard, after due notice, and the court having issued a ruling of even date, in accordance with which, it is hereby

(1) ORDERED that the motions of the Attorney General are granted with respect to the gifts of Adele B. Smith, Abel I. Smith, Harold C. Strong, Agnes P. Kelley, Wesley C. Winslow, Edna Spiotta and Helen Kozlick and that the Trustee abandon any interest in such gifts; and that the automatic stay is modified to permit the Attorney General to seek application of the doctrine of approximation (cy pres) in state court with respect to such gifts; and

(2) ORDERED that the motions of the Attorney General are denied with respect to the gifts of Charles H. Pine, Joseph Rosgen, Mary MacLeod, Elizabeth Harden, Mildred Smith, Alice W. Burke, Richmond Paine and Edward P. Wilcox.

AO 72A
(Rev.8/82)

Dated at Hartford, Connecticut, this 13 day of June, 2000.

*[signature]*
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE